The Honorable Judges of the United States Court of Appeals in and for the 7th Judicial Circuit. Deary, deary, deary, all persons having business before this honorable court are admonished to draw near and get their attention as the court is now sitting. God save the United States and its honorable court. Good morning, ladies and gentlemen. Our first case for argument is the Broiler Chicken Antitrust Litigation. Ms. Luster. Good morning, may it please the court, Lori Luster and Bill Zinsemberg for the appellants of the restaurants that are with me at council table is my colleagues Bob Turkin and Scott Wagner. Rule 23 exists to ensure that the class action mechanism functions properly and as part of that the rule provides several guardrails to ensure that when the class arrives at the settlement stage that the class action appropriately protects the interests of those parties, class members, who are going to be bound by that settlement and those guardrails have only been fortified and strengthened by the 2018 amendment to Rule 23. The Simmons settlement that the district court approved blew through those guardrails and worse the explanation that was offered by both the class and the district court for why that occurred is because the restaurants are not entitled to the protections of Rule 23. The first and most basic of those protections is basic fairness. That's Rule 23E. It's set forth in the rule very clearly and this court and every other court to have ever considered the application of Rule 23 have held that the most important factor in the fairness analysis is weighing the value of the claim or claims that are being released by the settlement versus the consideration that's obtained in the settlement. And now layered on top of that we have Rule 23E2D. What evidence is in the record about the value of the settled claims? So the evidence in the record, Judge, on the bid rigging that we provided to the district court understands the bid rigging claim is in its infancy in the case. It's pre-discovery. Tell me what evidence is in the record. Sure, Judge. So we provided the district court with specific references to the complaint that we filed which contains all of the evidence. Complaint is not evidence. Understood.  Tell me what evidence is in the record. Did you, for example, engage an expert who would attempt to value what the damages would be if there was a victory and assess the probability of victory? Yes, Judge. So the answer to that is no in connection with this appeal, but we did in connection with the Cook and House of Rayford appeal which is also being considered by this court. So that evidence is not currently the subject of this appeal, but it is related. The answer is no. There's no evidence in the record. Well, there are documents that are specifically referenced that are evidence that the district court had at its disposal to review including the testimony from the criminal case in which there was a witness. But did any of those criminal cases involve the defendant who settled here, Simmons? The criminal cases did not involve Simmons. Were there any allegations in the complaint involving Simmons? Yes, there were several allegations in the complaint involving Simmons. What can you point me specifically to those? I don't have the specific allegations in front of me. I'm happy to provide that to you once I'm able to locate them in the record, but I don't, Judge. I apologize. But the reality of it is, is that the bid rigging claim has value and under the rule Well, that's the assertion. That is the assertion. That's what our questions are designed to get at and I haven't heard anything indicating there's any value for a bid rigging claim against Simmons. There is a value to the bid rigging claim, Judge. The analysis centers on the fact that the class received nothing here, zero. So by definition, the claim Nothing for what? For bid rigging. One of the problems is that in antitrust, a reduction in output is what drives the increase in prices. So if you say, I've got a claim for reduction in output and I've got a claim for bid rigging, that's just two ways of describing the same thing. That's why you need some kind of expert analysis to inquire whether this is what would seem to me the most unusual case where arguing bid rigging has marginal value over the value of a claim of reduction in output. And you can make all the allegations you want in a complaint, but that's not evidence. You see the problem? I understand the concern, Judge. I do. Again, we provided the evidence of the value of the bid rigging claim to the district court. The district court decided to And what evidence was that? It was information about specific evidence that was admitted in the criminal case. These are bid rigging Evidence in the criminal case is not evidence about the value of a released claim in a civil case, a marginal value over the value of what styled the reduction in output claim. And I understand, Judge. This being antitrust, marginal value is terribly important. I understand. It's not marginal. I will tell you. And I don't want to speak outside the record. But we have expert analysis on this very point. And I don't want to speak out of turn. I'm sorry. If it's not in the record, it's not in the record. If you have expert analysis on this very point, you needed to put it in the record.  And it is in the record for purposes of the Cook and Hassell Braford Appeal that the panel will consider. And I submit to the court that the other issues that I need to address here are going to overshadow the fairness analysis in any respect. Can I ask you a question about what I think is the heart of this, which seems to be your theory that you constructively opted out, right? Yes, Judge. Can you point us to other cases that have embraced a constructive opt out? Well, Your Honor, there are several cases in which either the court or the parties have indicated that the class has indicated that they are not pursuing a claim. And in those cases, the courts have held that that claim, therefore, cannot be the subject of a class settlement. Okay. And then I'd like to ask you if I understand the timing relevant here. Because I understand this is a big, complicated MDL with lots of classes and subclasses and so on, a real management challenge for Judge Durkin. But the timing here seems to me to be a little bit unusual in a way that's relevant to your case. Because if I understand correctly, at the time class certification was being debated, the judge had already adopted the track one, track two approach. Is that right? That's correct. That's correct, Your Honor. And had already made, and the class lead counsel already indicated they were opting for track one. That is correct.  Did your clients object to the class certification? We did not. I did not see anything, any such whine, but well. But what seems most extraordinary about this is that the scenario that you are complaining about now seems like all the pieces were in place at the time the class was being certified and at the time your clients had the option to exclude themselves from the class. Well, understand, Judge, at the time that the class was certified, the restaurants were pursuing their bid rigging claim. There was no indication from the district court or the class that they were intending to settle a claim that had never been certified and that had never been subject to an analysis under Rule 23. In fact, the district court, when he issued his Cook and House of Rayford order recently, made clear that he never considered bid rigging at the certification stage, specifically because the class gave it up. So everybody was very clear in this case, the defendants, the class, and the opt-out plaintiffs, who were opt-outs and who weren't. We couldn't pursue. I think it's not clear, and that's part of the problem. So your client doesn't dispute that they received the notice of class certification, correct? We do not dispute. We received it, of course. Yes. And, again, opting out is a very simple process, correct? In an ordinary case, this is not an ordinary case. Okay. And I understand that there were other opt-outs, correct? There were. There were. So what was the downside to opting out? Just to be sure. Understood, Judge. And, look, with the benefit of 20-20 hindsight and how the district court has interpreted this issue, we, of course, would have opted out. It would have saved us a heck of a lot of time and effort to brief this issue before the district court and this court, frankly. But the reality of the situation is whether we opted out or not is besides the point. It's now water under the bridge. We are here. That's why we have standing to be here, because we are a class member. And if we are a class member, then the court is required, the district court is required, to follow the requirements of Rule 23 to ensure that the claims are being treated equitably and fairly. And what has occurred here is a sellout of our claims in order to get a separate supply reduction deal done. The supply reduction claim is very different from the bid rigging claim, and the class never alleged it. They alleged it. Then they affirmatively abandoned it, which is even worse. They took the position that they never had to consider the value of the bid rigging claim because it was of no value to the class. They are only dutious to the class as a whole. And that can't be right. It just cannot be right. If that's the case, then class action litigators are going to be permitted to allege a claim a week after they certified it, by the way. They alleged it, then they failed to certify it a week later. They allege it, then they affirmatively abandon the claim, specifically because they know that they can't certify the claim. And then they try to settle the claim through the back door of a broad release in a settlement agreement knowing full well that they're throwing the claims of class members under the bus in order to get that deal done. That cannot be the law. It is not the law. And it is not what Rule 23 requires. And although the circumstances here are very unique and the two-track structure certainly contributed to that circumstance, we can't have a situation where this is permitted because it's just not right. And in fact, if we look at the certification requirements, which is another fundamental guardrail of Rule 23, in order to certify a class for settlement, the district court needs to analyze whether the proposal meets the requirements of Rule 23 A and B for purposes of judgment based on the proposal. That's the language of the rule. The district court never considered whether this claim is certifiable. And in fact, if what occurred here, which is a claim that was, the claim first was, never was the subject of a certification analysis. And the settlement occurred after certification. And then you have the other element here, which is they never gave notice of it. They never gave notice of the fact that they were changing the claims. And this is important from the advisory committee notes. Rule 23 E1 says that if a settlement proposal, quote, calls for any change in the class certified or of the claims, defenses, or issues regarding which certification was granted, that's what happened here. They are now attempting to certify a claim for settlement that was never the subject of an analysis. If that's the case, the advisory committee notes require that notice has to be provided to class members that they're doing that. I don't understand how committee notes can require anything. I'm sorry, Judge. I didn't hear you. I do not understand how committee notes can require anything. The text of the rule is what it is. Yes. How can committee notes require something? Well, it's not that it requires it. It's that it's given guidance. It's the notes. Correct. Right? Notes just don't have legal force. The rule has legal force. The rule has legal force, and the rule itself incorporates in section E2D and E2A the requirement that there not be a conflict of interest and the requirement that class members' claims be treated equitably. And it only makes sense that the rules would require that notice be sent to class members alerting them to the fact that a claim that was the subject of three well-publicized criminal trials was being released through the back door of a supply reduction case. This is an $8 million settlement. This is a supply reduction settlement. This is not a bid-rigging settlement. And that is basic information that should have been provided. The district court, of course, did not require a second notice at that phase. Again, and the other point that I'd just like to raise before I leave you with this is, again, there's conflicts of interest and adequacy of representation issues at play here. There is no question the class has admitted that they absolutely never took into consideration the value of the bid-rigging claim because it was not a class bid-rigging claim. It was not. The class didn't have it. They said the claims are individual and targeted and specific to our clients. That is a textbook conflict of interest within the class. How could a class representative ever represent the interests of class members who don't even share the same claim? They don't share the same claim. And in this context, especially when you have an abandonment of a claim, we shouldn't even be here having a discussion about conflict of interest and certification and fairness under the rules because there was no class bid-rigging claim to settle. The class had abandoned that claim pre-certification. It's no different than a class moving to certify a claim and then having it be denied. What happens to that claim? It reverts. Let me ask you if I could, counsel, about a more common scenario where a class, a putative class raises a number of different claims. There's some pre-certification motions practice in which the judge dismisses some of the claims. Class is then certified. Things proceed eventually to a settlement. The defense says, we're not going to settle unless you agree to settle all these claims you pled in your complaint even though they were dismissed because we want peace. Is there a problem with that? There wouldn't be a problem if those claims meet the requirements of Rule 23 A and B. And in most cases, they were just, that question was never raised in the hypothetical because they were dismissed before certification.  And if a claim is dismissed, then the claim, it does not exist as a class claim. And so technically, they are not permitted to settle a claim that doesn't meet the requirements of A and B. So, in my hypothetical, that settlement would be prohibited. No, it will, if they can demonstrate that the claims are certifiable, which in nine times out of ten, that occurs. Because at the certification stage, the judge is reviewing a claim that has some connection, some tethered evidentiary and factual connection to the claim that was dismissed in your hypothetical. Here we don't have that. The bid rigging claim is predicated on a completely different set of evidence and facts. That's the reason why the district court during the course of the Sanderson trial refused to allow bid rigging evidence to be admitted at the supplier reduction trial. It's because they're completely different sets of facts. He said they were completely different conspiracies and excluded it on 404B grounds, separate conspiracies. And in fact, that's the defendant's position. He agreed with the defendants throughout this case that that's the case. So in that circumstance, in your hypothetical, Judge Hamilton, where you would have a claim, a bid rigging claim, that is separate from the supplier reduction claim from an evidentiary standpoint, then absolutely certainly that claim would have to be certifiable under Rule 23 A and B before it could be settled, even if it were dismissed. Those are, that's just the language of the rule. It's incorporated directly in it. It must be certified for judgment based on a proposal, and that, Judge Easterbrook, is in the language of the rule. And so again, I find it disturbing that that might be an interpretation that class counsel would be permitted to do exactly what they've done here, which is to sell claims down the river to get another deal done. It's just, it's not what the rules require. So for that reason, we would respectfully request that the court reverse the district court's order finally approving the Simmons settlement. Thank you. Thank you, counsel. Mr. Puya. May it please the court. My name is Bobby Puya, Pearson Warshaw, LLP, co-lead counsel for the direct purchaser plaintiff class. We heard a lot today about the appellants and their individual claims. But in evaluating this... Just a matter of information, are there any indirect purchasers? There are two indirect purchaser... Even after Illinois BRIC? Well, the reason there are indirect purchaser classes is that they were brought under state law. Oh, under state law. The repealer. Yes, the repealer. So no indirect purchasers under federal law? No. We represent the direct class. Okay. That's okay. Thank you. So in evaluating the sufficiency of the Simmons settlement, it's important to focus on the class, which is comprised of thousands of chicken purchasers in addition to the appellants. The job of class counsel, including myself, is to adequately represent the interest of the class and enter into a settlement that provides them with substantial relief. We did that here. And the district court also did its job. By evaluating the Simmons settlement in light of the factors articulated by this court and relying on its intricate knowledge of the case gained over seven years of presiding over it from the moment it was filed until it went to trial in finding it was fair, reasonable and adequate. The Simmons settlement secured a substantial recovery in this case in excess of $8 million in a case where the class faced substantial litigation risk. And these risks were not hypothetical. There were six defendants that were dismissed at summary judgment and another defendant who prevailed at trial. Absent the settlement, the class could have walked away with nothing from Simmons rather than the millions of dollars provided by the settlement. The district court also correctly found that the Simmons settlement satisfied all other elements of fairness and adequacy. It was reached through arm's-length negotiations by experienced counsel. It was reached while the Simmons summary judgment motion was pending and there was a well-developed record in the case. The trial against Simmons would have been lengthy, costly and risky. And the reaction of the class members has been overwhelmingly positive. Out of the thousands of class members, the appellants were the only ones who objected. And the appellant's objection ultimately arises from their own decision not to follow the Rule 23 opt-out procedures rather than any defect to the Simmons settlement. The Rule 23 opt-out procedures are an essential part of the class action process and the proper means for the appellants to preserve their right to pursue their individual bid-rigging claims. Staying in the class has its consequences, the most important of which is that you do not get to continue litigating your related individual claims further. That is the relief that the appellants are ultimately seeking here. They want to stay in the class and receive the settlement benefits while also pursuing their related bid-rigging claims individually. And if they can't do that, they want this court to overturn the Simmons settlement in its entirety and deprive all the class members of the benefits it provides. The Fifth Circuit decision in corrugated container board antitrust litigation is poignant on this point. In short, the objectors felt entitled to the bird in the hand while pursuing the flock in the bush. If the objectors felt they could do this, that was their prerogative. But in doing so, they accepted the risk that they would be precluded. The district court was right to overrule the appellant's objections and approve the Simmons settlement. This court should do the same here. Now... Mr. Puglia, one of the things that concerns me here is this apparent lack of overlap between the restaurant's bid-rigging claims and the broader market manipulation claims, and in particular how the district court's approach to the Simmons settlement and the preclusion of these claims under the settlement fits in with the judge's decision to exclude any bid-rigging evidence in the one more general trial that took place. There is no lack of overlap from the settlement perspective, Your Honor. The bid-rigging claims are the same claim. They're antitrust claims involving the same transactions, the same chicken purchasers from the same defendants, involving violations of the same law. And we recited the procedural history of the case in our papers, notably how the appellants themselves believed that these claims were related and consolidated. They filed a motion to relate the case and consolidate them in which they conceded that these were ultimately the same claim arising from the same transaction. That's at SA-137. The court granted that motion. They went on to oppose the defendant's motion to sever the bid-rigging claims and argued that ultimately these should be part of the same action. The court denied the defendant's motion to sever, and the reason that the court denied the motion to sever was that it recognized that the various means by which the plaintiffs in this case, including the appellants themselves, have alleged violations of the antitrust laws ultimately overlapped. And the court subsequently reversed and granted a motion to reconsideration of its order bifurcating the bid-rigging claims. And the reason for that, again, was it recognized the overlap. So that's how the track selection arose, is because of that overlap that it required the class to make a choice in terms of which track it elected to proceed. We elected track one. We were justified in doing so. That's been recognized by the court and the appellant. Do you see a path by which a bid-rigging claim could be an appropriate subject of a class, a certified class? It could have been, but the decision that we made in this case, and we do this in every single case in which we bring a class action, we ultimately determine what are the appropriate claims for us to pursue, taking into account all the factors of which to certify. That doesn't mean we lose the right to release a bid. My question is a little more specific, and that is, at least it seems, my understanding of the way a bid-rigging conspiracy would work is it would have one targeted victim. It is more individualized. That's not to say that it couldn't be certified, but that is part of the reason. Can you show us cases where they have been certified? I'm not aware specifically. You wouldn't mind. But I believe the important point is that there's an element of confusion on the part of the appellants between what is the standard for class certification and what's the scope of an appropriate release in a class case. We've cited to extensive authority in this circuit and others, which affirmatively holds that a class action settlement can release claims other than those that were specifically alleged and litigated on behalf of the class. That's fundamental, and holding otherwise would have extremely broad implications here, which would mean that any time a class member happens to possess a related individual claim as the class, that couldn't be a part of the settlement. A defendant couldn't obtain a litigation piece, and each of those class members could come forward and say, yes, the class settlement was nice, but now I have this individual claim. I think I understand the point, but I'm also concerned about at least some potential for unfairness here. Mr. Puglia, from your perspective, what would be the narrowest grounds on which we could affirm here? I'm sorry. I'm struggling to understand the question. Well, let me hypothesize an opinion that focuses on the timing here, the unusual circumstances in which the opt-out decision time comes after you and your colleagues drop the bid-rigging claims on behalf of the class, or at least signal you're not pursuing them, and after the district judge has chosen the track one, track two structure, so that the potential consequences would seem evident there. So ultimately, that's the prejudice that really they're claiming. This entire appeal arises from the fact that their motion for a constructive opt-out was denied, and that they found themselves as part of a class that they never wanted to be in. And that's really the prejudice of which they complain. They never wanted to be... Well, they knew they were going to be part of the class, right? There's an element of, well, you quoted the Fifth Circuit about the bird in the hand, the flock in the bush. I'm thinking heads we win, tails you lose. Well, they knew they were a class member, and as a class member, they were required to opt-out if they wanted to pursue their individual related bid-rigging claims. And that's ultimately what they're trying to do. They cannot do that within the context of a class action settlement. So to answer your question, where is the prejudice ultimately? Where does it arise from? It's the fact that their constructive opt-out arguments were not granted by the court. Can you give us a sense of the volume of opt-outs and the circumstances of those who did opt-out? The volume of opt-outs, there were approximately 130 opt-outs. They were mostly large purchasers of chicken, such as the appellants, and every single one of them, including those who had filed their own individual claim, who were proceeding in Track 2, either followed the opt-out procedure or they conceded that it applied to them and it needed to be followed. And that is the path that the appellants ultimately needed to take to preserve their claim. The class here shouldn't be deprived of the benefits of the settlement, a settlement that satisfies the standards for fairness, adequacy, in this case, because of the appellants' concern with their individual claims. For those reasons, Your Honor, Your Honors, the district court did not abuse its discretion in approving the Simmons settlement, and we believe the court should affirm. What's the clearest signal to all members of the class that prior to the opt-out time, that bid rigging claims would be part of the case, at least sufficiently, to be able to settle them? The clearest indication was the instructions provided by the notice that's located in A-1823 of the record. It says if you have another lawsuit against the defendants, if you have another antitrust claim, you need to opt-out. That's the only way to preserve them. It also said speak to your lawyer if you have such a claim so that you can receive proper instructions. And undoubtedly, the appellants' lawyers were active litigants in the case. They were receiving every single filing. They were aware of the structural and procedural history of the case, and they should have been aware, like every other single opt-out plaintiff who was in their position, that they needed to act by opting out in order to preserve those claims and follow the procedures under Rule 23 and ensure that there's clarity in the process here. Thank you, Your Honor. I'm happy to answer any other questions that the court may have during the time that I have left. Thank you, Mr. Flory. Thank you. Ms. Murray. May it please the Court, I am Lynn Murray. I represent the Simmons defendants in this case. A couple of follow-ups from some questions that you had. First of all, the notice itself said that plaintiffs alleged supply restraint, sharing of pricing information, and otherwise manipulating boiler prices. So that notice was not limited to supply restraint. It was a broad notice. Second, there were various times when the appellants received additional notice. On April 18th of 2023, the claims administrator filed an affidavit showing all of the opt-outs. And here we have Bojangles, White Castle, and the opt-outs included Wendy's and McDonald's and all of those other cases. That was before the Simmons settlement. That was in the hands of the appellants. Then, in June, two other plaintiffs who had not opted out fell on the sword and went to Judge Durkin and said, we didn't opt out. We realize that we're bound by what happened in the class for the time period between the deadline and the time that we are here in front of you, Judge, but will you let us opt out late? And the judge did. And in fact, the judge let the appellants opt out late. In September of 2023, directly before the trial, they finally came to him with a motion for clarification, with a motion to confirm that they were an opt-out. And the judge said, I'm going to let you opt out late, but the things that happened between April 4th of 2023 and now, you are bound to those decisions. So there was lots of available notice here. That included the settlement with Simmons. Yes, it did. Simmons is a relatively small player here. We are a fraction the size of companies like Tyson, for example. Yet, we agreed to pay more than $8 million to the class. It was our first set of settlements in eight years. And we were buying peace from the class. We would not have settled with the class for $8 million if class members would retain bid-rigging claims or really any antitrust claims associated with these transactions. And no defendant would. That test is highly impractical in terms of being able to settle class action cases such as this one. To confirm, when asked about evidence, which is a narrow way to rule here, when asked about evidence, the appellants point to the criminal cases. Simmons, the company, was never indicted in the criminal cases. No Simmons executive was indicted in the criminal cases. We did not even receive a subpoena from the Department of Justice. And as to the allegations in the complaint, those allegations, when Simmons' name is mentioned in the complaint, for any reason, they're citing internal Simmons emails about pricing and pricing decisions. They're not citing anything to do with bid-rigging. So even the allegations don't meet the bid-rigging test. And that's currently a motion to dismiss pending in front of Judge Durkan. Judge Durkan established clearly defined procedures for opting out. All it required was name and address, I'd like to opt out, and a signature, a paragraph. That's all it required. And we agree with the appellants that we shouldn't be here. We've spent the last 14 months, instead of complying with that simple procedure, we've spent the last 14 months litigating a motion to confirm, a motion to clarify, an objection to the settlement, and this appeal. All of this could have been avoided by a timely one-paragraph opt-out. It could have been avoided by an untimely opt-out. When all this information was coming in, Judge Durkan clearly was letting parties opt out late. As Judge Easterbrook has noted in past cases, following mechanical rules is the only sure way to handle suits with thousands of class members. And having set forth a clear process, in a very difficult case to manage, Judge Durkan was entitled to require the class members to do what they were told or to bear the consequences. The consequences here are that they are bound by the class decisions during the time period when they were in the class. I see my time is up, unless the court has any questions? Thank you. Thank you very much, Counsel. Anything further, Ms. Lushman? A few points for the court. First, Judge Maldonado, the allegations for Simmons that I had promised you are at paragraphs 901, 1073, 1096, 1097, and 1105 of the Second Amended Consolidated Complaint. But again, all that is frankly irrelevant because it's not very surprising that the defendants are going to take the position that they didn't do anything wrong in an antitrust case. That's not the issue that we're here for. A few fact-checking issues. As far as the signal to the class about whether the class was going to be settling a bid-rigging claim, there was no signal. There was zero signal. In fact, if you look at the certification notice, it specifically talks in terms of the claim set forth in the litigation, in the class case. Bid-rigging was long gone by the time that notice came out. Bid-rigging was abandoned pre-certification on behalf of a punitive class, and it happened years, years before that notice came out. So everybody very well, if there was one claim in this case that everybody understood was not and could never be alleged by the class, it was bid-rigging. And Judge Jerkin made that very, very clear in his rulings. As far as the same transaction issue, class counsel keeps saying it's the same products. It is not the same products. It is a different time period. It is different products, and there are different defendants involved. And all of that is set forth by their own expert. Their expert specifically excluded our purchases from their damages calculation, which served as the predicate for this negotiation that's on the table right now. And beyond that, as the court will see in the related appeal, their expert has affirmatively stated that it is different products and different time periods, and that the claims are completely separate and distinct. When you say separate appeal, are you referring to number 2422? Yes. Yes, Judge. How is that before us? It doesn't look like the district judge has finally approved those settlements. He has. He has. He has. He had before you filed the appeal? This appeal was filed first, and then the district judge finally approved that settlement recently, which is why we asked for settlement agreement. When you say recently, do you mean before or after the appeal in 2422? After. Well, you can't appeal before a final judgment. You appeal after a final judgment. No, no. We appealed after the final judgment, Judge. We appealed after the final judgment. One reason I ask this is because your brief is defective. It has to include, as an appendix, the district court's judgment being appealed. And your brief in that case doesn't do that. We don't have a brief in that case yet. The briefing in that case has been suspended. You have certainly filed a brief in 242422. You asked for permission to file it so that we can... In this case, right. Correct. Do you think that's not your brief in that case? No, I understand the point. You asked for permission to file a brief in that appeal, which we granted. Oh, okay. You then didn't file a proper brief in that appeal. Okay. You see the problem, I hope. I understand, Judge. We filed our motion for supplemental briefing in this appeal, and we believed it was a supplemental brief in this appeal. The briefing on the related appeal has been stayed pending this argument by this court. But regardless, I just... Thank you very much, counsel. Case is taken under advisement.